# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE  DIVISION

Romero                                                     Civil Action No. 13-02928

versus                                                     Judge Robert G. James

Youngsville, et al                           Magistrate Judge Carol B. Whitehurst

# REPORT AND RECOMMENDATION

Currently pending before the undersigned, on referral from the district judge, is a Motion For Summary Judgment filed by the City of Youngsville, the Youngsville Police Department Chief, Earl Menard ("Chief Menard"), individually and in his official capacity as Chief of Police of the City of Youngsville, Officers Scott Bernard, Maurice Leblanc, Jr., Brian Laborde, and Douglas Heaton, each in his individual capacity and official capacity as a Police Officer for the City of Youngsville ("Defendants") [Rec. Doc. 29], Tammy Romero's ("Romero") Opposition [Rec. Doc. 42] and Defendants' Reply thereto [Rec. Doc. 45]; as well as Romero's Motion For Partial Summary Judgment [Rec. Doc. 47], Defendants' Opposition [Rec. Doc. 58] and Romero's Reply [Rec. Doc. 64]. Oral argument was conducted by the Court on March 16, 2016. For the reasons that follow, the Court will recommend that Defendants' Motion be granted in part and denied in part and Romero's Motion For

Partial Summary Judgment be denied.

### I. Factual Background

On the night of July 23, 2012, during an altercation with Victor Wirtz, Tammy Romero shot and killed Wirtz. Thereafter, the Youngsville Police Department was dispatched and Officers Douglas Heaton and Sgt. Brian Laborde arrived at Romero's home. The officers secured the crime scene. Officer Heaton attended to Romero and Laborde attempted to render first aid to Wirtz. Officer Heaton took Romero to his police unit and read Romero her *Miranda* rights at the scene.

Thereafter, Officer Scott M. Bernard arrived at the scene. Bernard notified Detective Dwayne Angelle, with the Lafayette Parish Sheriff's Office, who also arrived at the scene. Bernard requested that Angelle enter Romero's residence with him to retrieve clothing for Romero before he took her to the police department so she could change at the police department. At the police station, Bernard again read Romero the *Miranda* warnings and she signed a Waiver of Rights at that time. *R. 29, Exhs. D, P.* The second *Miranda* warning and signed waiver of *Miranda* were recorded on a video. *R. 29, Exh. C.*

Angelle processed the crime scene and took photographs of the interior of the home, as well as a video of the crime scene. He seized four items of evidence before a search warrant was obtained. Romero sought to exclude these four items as well as

the photographs and video from evidence at the criminal trial.

On April 4, 2014, a hearing on Romero's Motion to Suppress Evidence was conducted before Judge Patrick L. Michot. *Id., Exh. E.* Romero moved to suppress the video and photographs of items in plain view to the officers as well as items #13 (shell casing), #14 (box of cartridges from night stand), #18 (holster) and #19 (Encyclopedia book safe) as improperly seized. *Id.* Judge Michot ruled that the video and photographs taken at the crime scene were admissible, since they were of items in plain view to the officers. Judge Michot suppressed items #13, 14, 18 and 19 as being improperly seized.

A Lafayette Parish Grand Jury executed an Indictment dated October 3, 2012, against Romero for Manslaughter. *R. 29, Exh. F.*  On January 16, 2015, Romero plead guilty to negligent homicide, a violation of La. R.S. 14:32, in the Fifteenth Judicial District Court, Parish of Lafayette, civil action 2012-cr-139480, before Judge Michot. *Id., Exh. A.* On September 4, 2015, Romero was sentenced. *Id., Exh. B.* Romero's conviction has not been overturned/vacated nor has a writ of *habeas corpus* been filed on her behalf.

Romero filed this action in the Fifteenth Judicial District Court, Parish of Lafayette, Louisiana, on July 22, 2013 alleging Constitutional claims under the Fourteenth and Fourth Amendment*s,* the Louisiana Constitution Article 1, §§ 3, 5,

and various other state law claims. *R. 1-1*. Defendants removed the case on October 24, 2013. *R. 1*. Defendants filed their motion for summary judgment moving the Court to dismiss all of Romero's claims against them. *R. 29*. Romero filed the motion for partial summary judgment based on her claims related to Defendants' illegal search and seizure and for attorney's fees under 42 U.S.C. § 1988.

## II. The Parties Contentions

Defendants contend that the majority of Romero's § 1983 claims are barred by prescription but that all her § 1983 are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Defendants further argue, there was no violation of Romero's right to equal protection nor deliberate indifference to any federally protected right of Romero in the shooting of Wiltz. They contend the record indicates Romero was read her *Miranda* warnings at the scene and at the Police Department before she was interviewed. As to the violation of her Fourth Amendment right to privacy, a hearing on her motion to suppress was conducted in the criminal proceeding and specific items were suppressed and excluded as evidence by the state court judge. Ultimately, Romero voluntarily pled guilty to a lesser included offense of the one she was indicted.

Romero contends that Defendants violated her Fourth Amendment and La. Const. art. I,§5 right to privacy when they entered and searched her home and seized

her personal items without her consent or a search warrant. She further contends Defendants violated her right to equal protection under the Fourteenth Amendment and Louisiana Constitution Article I,§3, when on three prior occasions before July 23, 2012, the Defendants allegedly failed to protect her under La. R.S. 46:2140 and 46:2141, during their response to domestic abuse situations. Romero also contends that her § 1983 claims for violation of her federal and state constitutional rights to privacy (search and seizure), due process and equal protection are not barred by *Heck v. Humphrey*, which "is nothing more than a red herring because [her] lawsuit is not a collateral attack on her conviction." Finally, she contends that her state law claims for vicarious liability against the City of Youngsville and  Chief Menard have not been property addressed in Defendants' motion and should not be dismissed.

*III. Law and Analysis*

*A. § 1983 Claims*

Romero claims Federal causes of action for violations of the Fourth Amendment for the alleged illegal search and seizure of four items in her home and Fourteenth Amendment violations under the Equal Protection Clause and for deliberate indifference to her medical needs. Defendants assert that Romero cannot establish these constitutional violations and further assert that all of her Federal claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), as they constitute a

collateral attack on her conviction.

In *Heck*, the Supreme Court held, "[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87. The purpose of this doctrine is to avoid collateral attacks on valid convictions. If a § 1983 action would imply the invalidation of the plaintiff's conviction, the complaint should be dismissed unless the plaintiff can demonstrate that the conviction has already been expunged or reversed. *Id*. at 477. On the other hand,  when the plaintiff's § 1983 action, if successful, "will not inherently imply the nullification of the criminal judgment against the Plaintiff, the action should be allowed to proceed." *Id.*

*1. Fourteenth Amendment Claims*

*a. Equal Protection Clause*

Romero contends that Defendants violated her equal protections rights "on three occasions at Ms. Romero's home, all in actionable time before July 23, 2012." Specifically, Romero contends that she called Defendants to her home on December

26, 2010, June 7, 2011, and December 1, 2011, with complaints of domestic abuse by Wirtz. She further contends that upon responding to her calls, Defendants' violated various state law statutes, including La.R.S. 46:2140 and 46: 2141 of the Protection from Family Violence Act, for failing to arrest Wirtz and file a report of the incident.

Defendants argue Romero has provided no evidence to show that Defendants treated her unequally as compared to any other similarly situated individual with respect to the alleged domestic abuse situations. They further argue that Romero has not shown and cannot show any violations of La. R.S. 46:2131, *et seq.* Finally, they argue that the alleged Constitutional violations are based on events, actions or inactions, which occurred more than one year before this action was brought and which have prescribed. As the State law claims under La. R.S. 46:2131, *et seq.*, relate to Romero's § 1983 claims as well as her state law claims, the Court will address both the Federal and State law claims in this analysis.

The Protection from Family Violence Act imposes a duty upon law enforcement officers in situations where domestic abuse or violence has occurred. The duty imposed upon law enforcement officers by La.R.S. 46:2140(2) mandates that officers "use all reasonable force to prevent further abuse." This mandate includes arresting the abusive party where simple assault, aggravated assault, or simple battery has occurred, "when the officer reasonably believes there is impending

danger to the physical safety of the abused person in the officer's absence." Arresting the abuser is discretionary, "[i]f there is no cause to believe there is impending danger." La. R.S. 46:2140.

In *Hardy v. Bowie*, 744 So.2d 606 (La.9/8/99), the Louisiana Supreme Court described the duty of a police officer in performing his function as an officer:

> Generally, a police officer has a duty to perform his function with due regard for the safety of all citizens who will be affected by his action. His authority must at all times be exercised in a reasonable fashion and he must act as a reasonably prudent man under the circumstances. Officers are held to choosing a course of action which is reasonable under the circumstances.

*Id*. at 614. "We are mindful of the purpose and intent of the Louisiana Protection from Violence Against Family Act. At the same time, we are mindful that there is a 'thin line between the protection of victims of domestic violence and reasonable enforcement of the laws [which] is an often difficult one for law enforcement officers to walk.'" *Ardoin v. City of Mamou*, 685 So.2d 294, 297 (La.App. 3 Cir. 11/20/96).

Romero alleges constitutional violations of equal protection against Defendants under the Fourteenth Amendment which mandates that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "Its central purpose is to prevent the States from purposefully discriminating between individuals on the basis of race." *Shaw v. Reno*, 509 U.S.

630, 642 (1993).  Romero bases her equal protection claim on the allegation that Defendants made a written report when they responded to a domestic abuse call by Wirtz but failed to make such report on the three occasions they were called by Romero. *R. 42, p. 21.*

The record, however, disputes Romero's contentions. In addition to the report related to the domestic abuse call by Wirtz on February 28, 2012, *R. 29, Exh. M*, the record indicates that written reports were made after each incident in which Romero made a complaint—December 26, 2010, June 7, 2011, and December 1, 2011, *R. 29, Exhs. G, I, L.* But even assuming Romero has a viable equal protection claim against Defendants, the alleged Constitutional violation is based on events, actions or inactions which occurred more than one year before this action and the State law claims are prescribed.

"Section 1983 does not contain a statute of limitations, so the law of the forum court applies and prescribes a one-year period. For the state law claims, Plaintiff also faces a one-year prescriptive period under Louisiana's civil rights laws." La. Civil Code art. 3492. *Cruz v. Louisiana ex rel. Dept. of Public Safety and Corrections*, 528 F.3d 375, 378 (5th Cir. 2008). Thus, to the extent that Romero's 42 U.S.C. § 1983 claim alleges  violation of her civil rights based on these past incidents, § 1983 does not contain its own prescriptive period and, as such, federal courts apply the state law

of prescription governing an analogous cause of action as if it were it brought under state law. *See Ganheart v. Xavier University of Louisiana*, 2009 WL 24227, at *7 (E.D.La.,2009).

Romero contends that prescription should not run until "damage is sustained." She argues that while the wrongful acts occurred more than one year before the present suit was filed, Romero did not sustain any resultant damages until the July 23, 2012 incident. Romero relies on *Rayne State Bank & Trust Co. v. National Union Fire Insurance Co*., 483 So.2d 987 (La.1986) in support of her argument. In *Rayne*, the Louisiana Supreme Court found that a bank was damaged due to the invalidity of a chattel mortgage drafted by its attorney. The bank had attempted to foreclose on the mortgage even though it knew the mortgage was defective. Subsequently, the debtors filed for bankruptcy and filed an adversary proceeding to invalidate the mortgage. The court held that the prescriptive period began to run when the adversary proceeding was commenced to invalidate the mortgage.

*Rayne* is distinguishable from this case as it involved attorney malpractice which was not immediately known to the plaintiff. Here, Defendants' officers were dispatched to Romero's home on three different occasions wherein, according to Romero, they failed to arrest Wirtz and/or make a written report of the incident. Romero knew at the time of the incident at issue what had transpired during each

-10-

previous incident. Romero stated in her deposition testimony that she never complained of domestic battery, *R. 29-6, pp. 75-77,* and after every incident she allowed Wirtz to return to live in her home, *R. 29-17, pp. 49-51.* The undersigned finds that *Rayne* is inapposite to the circumstances in this case. Thus, any Federal or State law claim brought for alleged action or inaction that occurred before July 22, 2012 has prescribed and should be dismissed with prejudice.

Further, the Court finds that Romero's § 1983 claim based on Defendants' alleged failure to perform their duties under the State law domestic violence statutes is barred by *Heck.* In essence, Romero contends that if Defendants had properly responded to her calls related to domestic abuse by making a report and arresting Wirtz the incident at issue would not have occurred. Romeo's claim implies the invalidation of her conviction and constitutes a collateral attack on her valid conviction.

b. *Deliberate Indifference*

As to the claim of deliberate indifference to her medical needs, Romero asserted in her deposition that Defendants denied her medical care. *R. 29, Exh. O, p. 18.* Romero contends she suffered "emotional distress related to the illegal search and seizure," *R. 47, p. 15*, and that she suffered a "concussion" when Wirtz struck her on the back of her head during the incident at issue, *R. 42-2, Aff. Of Romero, ¶ 10.* She

contends that following the incident, she had a "severe headache and felt nauseous as a result of the concussion" and later, at the police interrogation room, she threw up in a trash can. *R. 42-2, Aff. Of Romero, ¶ 13*. In her motion for summary judgment she claims she was not given a medical screening and not provided medical assistance. Romero, however, provides no evidence as to any medical condition she suffered nor does she cite any diagnosis or treatment related to her "concussion" or her alleged emotional distress.

Romero was a pretrial detainee during the time period about which she complains. As she was not a convicted prisoner at that time, she has no Eighth Amendment claim. *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996). The Fifth Circuit set out the deliberate indifference standard for a pretrial detainee in *Hare*:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

*Hare*, 74 F.3d at 650.  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk

of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Southard v. Texas Bd. of Crim. Justice*, 114 F.3d 539, 551 (5th Cir.1997).

The record indicates that in her interview related to the events leading up to her shooting Wirtz, Romero told the officers that Wirtz struck or slapped her "full handed" with an "open hand" once on the back of her head. *R. 29, Exh. D, p.42-43, 68*. When the officer asked if she felt anything where he hit her, she stated, "Just a headache really... I mean it's not...." *Id*. That record provides that Romero never asked Defendants for medical care during that interview. In a subsequent interview in which the officer indicated he wanted her to go over the events once again, Romero began vomiting. *R. 72, Exh. F*. While she did not ask for medical assistance, she did ask to call an attorney. *Id*. Romero concedes that during the period she was detained in jail she did not seek medical care and there is no record of any medical complaints by Romero. *R. 29, Exh. O, Depo of Romero, p. 18*. Nor was Romero ever treated by a mental healthcare provider. *Id. at p. 43*. Based on the above jurisprudence, Romero has failed to establish a claim for deliberate indifference to her medical needs and Romero's claim should be dismissed.

-13-

*2. Fourth Amendment Claim*

Romero claims in her motion for partial summary judgment that Defendants violated her rights under the Fourth Amendment when they conducted an "illegal search of [her] residence and illegal seizure of items located therein which occurred on July 23-24, 2012." *R. 47, pp. 1-2.* She contends Defendants conducted the search and seizure "without exigent circumstances and without [her] consent." *R. 42, p. 20.* She further contends that Officer Bernard "falsified the statement for probable cause on the Affidavit for Search Warrant." *R. 47, p. 5.* Finally, Romero contends that she "made several requests for an attorney which went unanswered.... At no point was [she] allowed to call her attorney prior to being booked...." *Id. at p. .* Romero contends she suffered damages in the form of emotional distress, attorney fees and court costs as a result of these violations. She further contends that she has never recovered the wrongfully seized items despite her motion to the state court.

Contrary to Romero's contention that the Youngsville officers entered her home without consent, the record provides that Officers Heaton and Laborde responded to Romero's 911 call that a shooting had occurred at her home. While her shooting of Wirtz gave Defendants probable cause under the exigent circumstances involved to enter her home, Romero met the officers at the front door, directed them into her home and pointed them to Wirtz's body "in the back" bedroom.  Thereafter,

Officer Heaton led her to the back seat of his unit and read her Miranda rights while Officer Laborde and the ambulance responders attended to Wirtz. *R. 29-7, pp. 66-75.*

Romero filed a pre-trial motion to suppress the evidence obtained at the crime scene which consisted of photographs and a video of the scene, the gun used to kill Wirtz and four other items—a shell casing and three items from a bedside table drawer. The record provides that this evidence was taken by Detective Dwayne Angelle to process the crime scene. *R. 29, Exh. E, Suppression Hrg, pp. 17, 19-22.* Angelle was employed by the Lafayette Parish Sheriff's Office—not the Town of Youngsville—and is not a defendant in this case. At the time Angelle initially processed the scene and gathered the aforesaid evidence, a search warrant had not been issued.

Romero filed a motion to suppress items seized by Detective Angelle, which the state court judge granted, finding they were not in Angelle's plain view, and were therefore wrongfully seized without a warrant. The video of Romero's voluntary confession and pictures of other items at the crime scene which were in Angelle's plain view were not excluded. Thus, the items about which Romero now complains were never used against her in the prosecution of her criminal case.

Defendants argue that Romero's claims for damages based on the state court's finding that the items should be excluded under the exclusionary rule, does not entitle

Romero to damages. Citing *United States v. Calandra*, 414 U.S. 338 (1974), they contend that "[t]he purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim.... Instead the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures: 'The rule is calculated to prevent, not to repair. Its purpose is to deter–to compel respect for the constitutional guaranty in the only effectively available way–by removing the incentive to disregard it.' ... In sum, the rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, **rather than a personal constitutional right of the party aggrieved**. *Id. at 347-48.* (Emphasis in the original).

Defendants further contend the record provides that Romero suffered no damages related to the incident because: (1) her contentions against Defendants regarding the return of her seized property is without merit as the property is not in the control of the Defendants; (2) the wrongful search and seizure of which Romero complains was conducted by Officer Angelle who was a member of the Lafayette Parish Sheriff's Office at the time of the incident; (3) Romero provides no evidence to support her statement that Angelle "was under the direction and supervision of [Youngsville Police Department]" beyond the statement that Defendants called

-16-

Angelle to secure the crime scene and process the evidence; (4) Romero, who was convicted of negligent homicide, cannot demonstrate that any injury to her reputation was caused by the search and seizure in question; and (5) Romero did not plead guilty to negligent homicide because of the search and seized items—her video recorded voluntary confession and her voluntary plea of guilty were the basis of her conviction. *R. 29. Exh. A, Exh. O, p. 53.*

Defendants cite *Lavergne v. Louisiana State Police*, 2014 WL 906285, at *2 (W.D.La.,2014) in support of their core position that Romero's claims as analyzed in the foregoing, are ultimately barred by *Heck*. In *Lavergne*, Lavergne pled guilty to two counts of murder. In his lawsuit against the Louisiana State Police, Lavergne alleged an illegal search and seizure of items from his home and vehicle "directly caused me to plead to [murder] charges." *Id.* at *1. As in this case, Lavergne's conviction had not been directly appealed, no federal court had issued a writ of *habeas corpus* nor had any Post-Conviction Relief been granted. Finding that Lavergne's suit was barred by *Heck v. Humphrey*, the court stated:

> While Lavergne argues that his murder convictions and resulting sentences are invalid and unconstitutional, Lavergne stands convicted, and his convictions were, in part, the result of the alleged complained of illegal and unconstitutional actions of the defendant. Thus, it is clear that if this court were to grant Lavergne the damages he seeks, that ruling would necessarily implicate the validity of Lavergne's convictions and sentences. Accordingly, Lavergne's claims, which are directed at the

> validity of his criminal prosecution and resulting convictions and
> sentences, are barred by *Heck*. The claims are not cognizable under 42
> U.S.C. § 1983 at this time. These claims must therefore be dismissed
> with prejudice for failure to state cognizable claims. *See Johnson v.
> McElveen*, 101 F.3d 423, 424 (5th Cir.1996).

Defendants assert the reasoning of *Lavergne* applies in this case. Even though a *Heck*

analysis in this case is more attenuated than in *Lavergne*, Romero's claims to recover

damages for harm caused by Defendants whose unlawfulness could question the

validity of her conviction, are barred by *Heck.*

When a convicted prisoner seeks damages in a § 1983 suit, the district court

must consider whether a judgment in favor of the plaintiff would necessarily imply

the invalidity of his or her conviction or sentence; if it would, the complaint must be

dismissed unless the plaintiff can demonstrate that the conviction or sentence has

already been invalidated. *See Heck*, at 486–487; *Curran v. Aleshire*, 67 F.Supp.3d

741, 748 (E.D.La.,2014). *See Johnson v. Bradford*, 72 Fed. App'x 98, 99 (5th

Cir.2003); *Hall v. Lorenz*, No. 02–50312, 2002 WL 31049457 (5th Cir. Aug. 30,

2002).

Here, Romero's claims of unlawful search and seizure are insinuations that the

entire process related to Defendants response to her 911 call and the investigation that

pursued was unlawful. She contends that Defendants did not allow her to call an

attorney, that they harassed and intimidated her and that they "falsified" the arrest

warrant which was used to complete their processing of the crime scene. Romero's claim of illegal search and seizure in this context would necessarily implicate the validity of her voluntary videotaped statement to the police, her plea of guilty and the criminal conviction and would therefore be barred by *Heck*.

*3. Qualified Immunity*

Defendants contend that in the event the Court determines that a constitutional violation occurred, the four individually named Youngsville police officers, Officer Heaton, Officer Laborde, Officer LeBlanc and Officer Bernard, as well as Chief Menard, are entitled to the defense of qualified immunity. Qualified immunity, an affirmative defense to a suit under 42 U.S.C. § 1983, protects government officials in their personal capacity, while performing discretionary functions, not only from suit, but from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Prison Legal News v. Livingston*, 683 F.3d 201, 224 (5th Cir.2012). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir.2013).

The Court employs a two-pronged inquiry to resolve questions of qualified immunity at summary judgment.  "The first asks whether the facts, '[t]aken in the light most favorable to the party asserting the injury ... show the officer's conduct

violated a [federal] right[.]' " *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id*. "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." Tolan, 134 S. Ct. at 1866. "This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' " *Id*.

While the record provides that the state court found Romero suffered a wrongful search and seizure of her home, this Court has found that Romero failed to establish that Defendants violated Romero's constitutional rights. Rather, the record provides that Detective Angelle of the Lafayette Parish Sheriff's Office entered Romero's home and conducted the wrongful search and seizure without a warrant and without exigent circumstances.

Romero has not presented sufficient evidence to negate the assertion of qualified immunity. The facts provide that neither Officer Heaton nor Chief Menard were personally involved in the alleged violations at issue and Romero does not dispute that fact. Thus, Heaton and Menard committed no constitutional violation and are entitled to qualified immunity.

Romero does not allege that Officer LeBlanc searched her home. Instead, she contends that he violated her Equal Protection rights when he violated La. R.S. 46:2141 by failing to make a written report of two incidents on December 1, 2011 and February 28, 2012.  The Court has previously addressed Romero's contentions and found that the alleged violations of state law involved in these past incidents did not violate any clearly established constitutional right necessary to support a § 1983 action, and also that they are prescribed. Officer LeBlanc is entitled to qualified immunity.

While Officer Laborde entered Romero's home, checked on Wirtz and prepared a report following the shooting incident, he did so at Romero's consent and under exigent circumstances. As Laborde conducted no search or seizure, he committed no constitutional violation and is therefore entitled to qualified immunity.[1]

During the incident in question, Officer Bernard entered Romero's home with Detective Angelle only to obtain Romero's clothing with her permission. Officer Bernard seized no evidence. As Officer Bernard's actions did not constitute a Constitutional violation, he is entitled to qualified immunity.

---

[1] Romero also alleges Officer Laborde was one of the officers who responded to a December 26, 2010 incident at her home and failed to fill-out a report. The Court has previously found that such claims fail to constitute a constitutional violation and are prescribed.

*B. State Law Causes of Action*

Romero alleges state law causes of action under Louisiana Constitution Article 1, §§ 3 and 5, La. R.S. 46:2131, *et seq.*,[2] negligent supervision and/or training, negligent and intentional infliction of emotional distress and vicarious liability. As plaintiffs' federal claims are dismissed, the Court will decline to retain supplemental jurisdiction over plaintiffs' remaining state law claims. 28 U.S.C. §1367. "Under § 1367, a district court may 'entertain state law claims pursuant to its supplemental jurisdiction, provided the claims arise from the case or controversy over which the district court had original jurisdiction.' When all federal claims are dismissed from the case or controversy before the district court, however, § 1367(c)(3) permits the district court to exercise 'wide discretion in determining whether to retain jurisdiction over the remaining state law claims.'" *Martin v. Warring Investments Inc.*, 323 Fed.Appx. 313, 317 (5th Cir. 2009) (quoting *Welch v. Thompson*, 20 F.3d 636, 644 (5th Cir. 1994)).

---

[2] In her opposition memorandum, Romero requests additional time to conduct discovery pursuant to Rule 56(d), in order "to depose Defendants regarding the violations of La.R.S. 46:2131, *et seq.*" Any such discovery would not benefit Romero in her federal law claims addressed by the undersigned in this Report and Recommendation.

## IV. Conclusion and Recommendation

Based on the foregoing analysis, it is the recommendation of the undersigned that Defendants' Motion For Summary Judgment [Rec. Doc. 29] be **GRANTED IN PART** and **DENIED IN PART** in that Romero's claims under 42 U.S.C. § 1983 be **DISMISSED WITH PREJUDICE** and the state law claims be **REMANDED** to the Fifteenth Judicial District Court. The undersigned further recommends that Romero's Motion For Partial Summary Judgment [Rec. Doc. 47] be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds

of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

THUS DONE AND SIGNED this 2nd day of April, 2016.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**